**DENNIS RIGGINS**
**72 MAGNOLIA AVENUE**
**MOUNT VERNON, NY**
**TEL. NO. 914-316-5893**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK
### (WESTCHESTER VINTAGE)

---

**DENNIS RIGGINS,**

Docket No. **20-cv-00017**

                    Plaintiff,

                                                    **Civil Action**

**WILMINGTON SAVINGS FUNDS AND**          **JURY TRIAL DEMANDED**
**SOCIETY; UPLAND MORTGAGE ACQUISITION CO. LLC**
**BAYVIEW LOAN SERVICES LLC., M&T BANK;**
**CARRINGTON MORTGAGE LOAN SERVICES**

                    **Defendant(s)**

---                                       /

RECEIVED SDNY DOCKET UNIT 2020 JAN 2 AM 9: 57

      **NOW COMES Dennis Riggins, the plaintiff pro se' in the above captioned matter,**
and who herein files this instant Federal Civil Action, and in support thereof Respectfully states
and alleges as follows:

      1.  That I am more than 18 years of age, a citizen of the United States, and a resident of
the State of New York, residing at 72 Magnolia Avenue, Mount Vernon, New York, 10553

      2.  That no other civil action has been filed in any other Court or Jurisdiction involving
the same issues as prosecuted in this instant complaint.

**1/22**

## JURISDICTION & VENUE

3.   That jurisdiction lies before this Honorable Court, where the plaintiff's civil action presents a federal question and defendants caused the plaintiff to suffer ascertainable damages in excess of Seventy Five thousand dollars ($75,000.00), and jurisdiction is found under Title 28 USC §1331/2.

4.   That venue lies before this Honorable Court, where the events complained of took place within the jurisdictional boundaries of this Court.

5.   That plaintiff invokes the right of this Honorable Court to take jurisdiction over all related State claims.

## THE PARTIES

6.   That the plaintiff is the true owner in due course of a property in controversy located at   72 Magnolia Avenue, Mount Vernon, New York .

7.   That defendants **WILMINGTON SAVINGS FUNDS AND SOCIETY, and UPLAND MORTGAGES ACQUISITION CO LLC ,**  erroneously claims to be the true owner in due course of  plaintiff's property located at 72 Magnolia Avenue, Mount Vernon, New York, and has caused the plaintiff to suffer ascertainable damages through the prosecution of a State Foreclosure Action, based upon a fraud on the court, lack of standing to foreclose, and related acts of fraud in concealment.

8.   That defendants  **BAYVIEW LOAN SERVICES,  M&T BANK, CARRINGTON MORTGAGE SERVICING,** acting in concert with defendants **WILMINGTON SAVINGS FUNDS AND SOCIETY, and UPLAND MORTGAGE ACQUISITION CO. LLC, erroneously** claims to be the true owner in due course of plaintiff's property , and has caused the plaintiff to

suffer ascertainable damages through the prosecution of a State Foreclosure Action, based upon a

fraud on the court, lack of standing to foreclose, and related acts of fraud in concealment, as set forth more fully below.

9.   That defendant **M&T Bank**, based upon information and belief is a domestic corporation doing business in New York State, providing Mortgage loan services, and alleges to be the servicer of the Riggins's mortgage.

10.   That defendant **CARRINGTON MORTGAGE SERVICES,** based upon information and belief is a domestic corporation doing business in New York, providing Mortgage loan services, and alleges to be the services of the Riggins's mortgage.

## PRELIMINARY STATEMENT

11.   A fraud against the plaintiff and his property located at 72 Magnolia Avenue, Mount Vernon, NY, 10553

New York , wherein the defendants prosecuted an erroneous civil action, in an abuse of process for foreclosure against the plaintiff's property never properly or timely serving the plaintiff with a copy of the civil action and without standing  causing the plaintiff to lose his property though a Final Judgment of Default, and Foreclosure, which remains under contest as of this date.

12.   That defendants as named herein have unlawfully and wrongfully foreclosed on and ceased plaintiff's property through a pattern and practice of fraud on the Court, and Fraud in concealment against the plaintiff, causing the plaintiff to suffer ascertainable damages, loss and damage to his credit standing and this civil action now follows.

## FACTS RELATED TO ALL COUNTS

13.   That the original owner of the property in controversy was Ruby Riggins, she executed the original Mortgage on June 6th, 2007 in the amount of $122,000.00 dollars, the mother of plaintiff now deceased.

14.     That JP Morgan Chase NA, was the investment bank during the securitization process and Fannie Mae is the Trustee, the Mortgage was placed into a Guaranteed Remic Trust 2007-63, Trust closing date June 29th, 2007.

15.     The chain of custody refers to the chronological documentation or paper trail, showing the seizure ,custody, control, transfer, analysis, and disposition of evidence both physical and electronic. Research regarding documents that were not found to be recorded in the chain of custody. To allow for the Power of Sale to be available for a party to have standing, the chain of endorsements appearing on the face of the Note Instrument must be in tandem match the recordation of the chain of Assignments of [Security Instrument] in the Public Records. Failure to properly record Assignments of the [Security Instrument] (lien) which would memorialize a Note's negotiation, where without endorsements as it pertains to the transfer of beneficial and Security interest in real property, can render the [Security Instrument] a nullity by operation of law as the Note is unenforceable under UCC 3-201, 3-204 & 3-302(d). "A security interest cannot exist independent of the obligation it secures." Negus-Sons, Inc., 460 B.R. at 758, quoting In re: *Advanced Aviation, Inc.,* 101 B.R. 310, 313 Banker. M.D. Fla. 1989

16.     Banking Practice does not overcome Uniform Commercial Code USCA (1988). The United States Court of Appeals Fifth Circuit determined that banking practice cannot overcome or substitute for enacted Uniform Commercial Code Statute: "Hibernia's reliance on commercial custom is misplaced. Commercial custom does not apply where the UCC provides otherwise. See UCC Sec.1-103; also UCC Sec. 3-104, Official Comment 2 ("writing cannot be made a negotiable instrument within this Article by contract or by conduct.") Moreover, it would be inequitable to apply the banking industry's unilateral "custom" to a maker, such as the Army,

that is unaware of or may not recognize such a custom." 841 F. 2d 592 ***United States of America v. Hibernia National* Bank** 96 A.L.R.Fed. 895, 5 UCC Rep.Serv. 2d 1392 United States Court of Appeals, Fifth Circuit 1988

17.   That it is a cornerstone and long held concept within United States Law, that when the rights to the Tangible Paper Note and the rights to the Security Instrument are separated, the Security Instrument, because it can have no separate existence, cannot survive and becomes a nullity. .In ***Carpenter v. Longan*** 16 Wall 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated **"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity... The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration.

18.   That the original lender of the mortgage and party to the promissory note is Sterling Empire Funding Associates, LTD., a New York Corporation as executed in a closing on June 6th, 2007, property in controversy located at 72 Magnolia Avenue, Mount Vernon, New York 10553. Mortgage of Ruby Riggins dated June 06, 2007 and filed in the Official Records of The Westchester County Recorder&#39;s Office on June 26, 2007 as ins# 471700063.

19.   Assignment of Mortgage", dated January 12, 2009 and filed in the Official Records of the Westchester County Recorder #39;s Office on August 18, 2010 as ins# 502213136, signed by Elpiniki Bechakas as Assistant Secretary and Vice President and notarized January 12, 2009 by Jamie Canella, New York Notary Commission #01CA6121112, where Mortgage Electronic Registration Systems, Inc., grants, assigns, and transfers to Chase Home Finance, LLC.

20.     That a Corrective Assignment of Mortgage, dated December 19, 2013 and filed in the Official Records of the Westchester County Recorder #39;s Office on January 30, 2014 as ins# 540233364, signed by Paul Burrier as Vice President and notarized December 19, 2013 by Darin Harrison Culler, Ohio Notary Commission #N/A, where Mortgage Electronic Registration Systems, Inc., grants, assigns, and transfers to JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC.

21.     That New York Assignment of Mortgage", dated April 03, 2014 and filed in the Official Records of the Westchester County Recorder&#39;s Office on June 11, 2014 as ins# 541623349, signed by Patrick D. Coleman, Jr as Vice President and notarized April 03, 2014 by Yolanda A Diaz, Louisiana Notary Commission #N/A, where JPMorgan Chase Bank, N.A.,S/B/M Chase Home Finance LLC grants, assigns, and transfers to Bayview Loan Servicing, LLC.

22.     That as part of a pattern and practice of fraud the defendants acted in concert with others in a scheme to flip and transfer the mortgage from entity to entity, creating a paper trail of deceit aimed at depriving the plaintiff of his lawful property and depriving him of his fundamental property rights.

23.     The Riggins Intangible Obligation was sold to the Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2007-63 shortly after the June 06, 2007 signing and subsequently in June 2017 was sold to the Upland Mortgage Acquisition Company 2017 – 32 Trust.

24.     The rights to the Riggins Intangible Obligation have been conveyed as a Transferable Record to the FNMA REMIC 2007-63 Trust. For the rights to the Riggins

Intangible Obligation not to have been stripped away from the rights to the Riggins Note by that conveyance, the rights to the Riggins Note must have also been transferred to the FNMA REMIC 2007-63 Trust.

25.     Even though the Riggins Intangible Obligation was owned by the FNMA REMIC 2007-63 Trust, it can only be determined if the original Riggins Note had been physically delivered to the FNMA REMIC 2007-63 Trust by checking with the custodian of documents. Until then, there is no evidence that the FNMA REMIC 2007-63 Trust possessed in any manner the Riggins Note before rights to the Riggins Intangible Obligation were stripped away shortly after the June 06, 2007 signing.

26.     The rights to the Riggins Intangible Obligation have been conveyed as a Transferable Record to the FNMA REMIC 2007-63 Trust. For the conditions of Riggins Mortgage over the Riggins Intangible Obligation not to have been stripped away by that conveyance, the rights to the Riggins Mortgage must have also been transferred to the FNMA REMIC 2007-63 Trust.

27.     The beneficial interest (ownership) of the Riggins Mortgage has been recorded in the Official Records of Westchester County Recorder&#39;s Office as being in the name of Sterling Empire Funding Associates, LTD., A New York Corporation, the Original Lender of the loan dated June 06,2007. However, it is clear that Sterling Empire Funding Associates, LTD., A New York Corporation sold all ownership interest in the Riggins Intangible Obligation to JP Morgan Chase Bank, N.A. ,shortly after the June 06, 2007 signing. Interest in the Riggins Intangible Obligation is held in the FNMA REMIC 2007-63 Trust, and the payments under the Riggins Intangible Obligation are disbursed to the investors of FNMA REMIC 2007-63 Trust

who hold certificates to the investment classes into which payments under the Riggins Intangible

Obligation are scheduled to flow. Therefore the transfer of beneficial interest in the Riggins

Mortgage by Sterling Empire Funding Associates, LTD., A New York Corporation might be

accomplished, but that beneficial interest is no longer attached to the rights to the Riggins

Intangible Obligation.

28.     As the FNMA REMIC 2007-63 Trust had an Interest in the Riggins Intangible

Obligation, the FNMA REMIC 2007-63 Trust Was Required to Have Interest in the Riggins

Note and Interest in the Riggins Mortgage.

29.     Fannie Mae had purchased an interest in the Riggins Mortgage Loan and delivered

that interest in the Riggins Mortgage Loan into the FNMA REMIC 2007-63 Trust and claimed to

have control of the Riggins Note and the Riggins Mortgage. Fannie Mae states in its May 2012

Fannie Mae Single-Family Selling Guide, under Preface:

**Terms and General Conventions, page xxiii:**

"…when the lender contracts to sell mortgages to Fannie Mae as whole mortgages (to
hold in our portfolio or to include later in MBS pools that we form). We remit cash proceeds to
the lender in payment of the purchase price for these mortgages."

30.     That by the FNMA REMIC 2007-63 Trust purchasing the Riggins Intangible

Obligation and doing with it whatever was done, the FNMA REMIC 2007-63 Trust was

exercising rights of ownership over the Riggins Mortgage Loan and the payment stream. By

exercising rights of ownership over the Riggins Mortgage Loan and the payment stream, the

FNMA REMIC 2007-63 Trust was making a claim of rights to all three parts of the Riggins

Mortgage Loan, **a claim which is misplaced.**

31.     The Riggins Mortgage Loan only exists through the tangible instruments creating

it, the Riggins Note and the Riggins Mortgage. The sale of the rights to the Riggins Intangible

Obligation to the FNMA REMIC 2007-63 Trust without stripping away the rights to the Riggins Intangible Obligation from the rights to the Riggins Note could only be accomplished with the accompanying negotiation of the Riggins Note and the accompanying assignment of the Riggins Mortgage to the FNMA REMIC 2007-63 Trust which is has not happened. Whereas the Trust as a standalone party has not lawfully been conveyed the Riggins Note, much less been filed of record as a secured creditor.

32.    The FNMA REMIC 2007-63 Trust has made claims of interest in the rights to the Riggins Intangible Obligation and exercised those claims. To exercise claims of rights to the Riggins Intangible Obligation, proper assignments of the Riggins Mortgage should have been Accomplished the FNMA REMIC 2007-63 Trust are acted as if proper assignments of the Riggins Mortgage have been accomplished

33.    The assignment of the Riggins Mortgage is a conveyance of an instrument concerning real property which must be recorded to be acted upon. United States Code considers that anyone certifying that a real estate instrument has been assigned when in fact it has not is guilty of a felonious criminal act.

**Title 18 USC Chapter 47 § 1021**

**"Whoever, being an officer or other person authorized by any law of the United States to record a conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both."**

34.    The negotiation of the Riggins Note to Fannie Mae is required both by Fannie Mae #39;s own requirements and New York State Law.

35.     Fannie Mae states in its own December 2010 Fannie Mae Requirements for Document Custodians v6.0, page 27:

### 8.1 Mortgage (or Deed of Trust) Note

**"The Document Custodian must receive the original mortgage (or deed of trust) note for each mortgage listed on the Schedule of Mortgages (Form 2005)."**

36.     The FNMA REMIC 2007-63 Trust cannot claim Interest in either the Riggins Note or the Riggins Mortgage

37.     The FNMA REMIC 2007-63 Trust had an interest in the Riggins Intangible Obligation. However, the transfer of rights, to either of the two tangible parts of the security instrument that evidence the Riggins Intangible Obligation, from Sterling Empire Funding Associates, LTD., a New York Corporation to the FNMA REMIC 2007-63 Trust is not memorialized in the Official Records of the Westchester County Recorder Office in a manner which observes United States Code.

38.     Under the Consumer Credit Protection Act Title 15 USC Chapter 41 § 1641(g): any transfers of the Riggins Mortgage Loan to the FNMA REMIC 2007-63 Trust would be in violation of Federal Statute, if those transfers had not been recorded in the Official Records of the Westchester County Recorder&#39;s Office within 30 days along with notification of Ruby Riggins that the transfers had occurred. As there are no recorded assignments of the Riggins Mortgage to the FNMA REMIC 2007-63 Trust within 30 days of June 06, 2007, either there has been a violation of Federal Law or the FNMA REMIC 2007-63 Trust, who have an interest in the Riggins Intangible Obligation, are not the owners of either the Riggins Note or the Riggins Mortgage.

**Title 15 USC Chapter 41 § 1641(g)**

**(g) Notice of new creditor**

**(1) In general**

**In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—**

**(A) the identity, address, telephone number of the new creditor;**

**(B) the date of transfer;**

**(C) how to reach an agent or party having authority to act on behalf of the new creditor;**

**(D) the location of the place where transfer of interest in the debt is recorded; and**

**(E) any other relevant information regarding the new creditor.**

39.     The FNMA REMIC 2007-63 Trust certifies that an assignment of the Riggins Mortgage has been accomplished by selling certificates as shares of the FNMA REMIC 2007-63 Trust to investors based on the placement of the Riggins Mortgage Loan. However, there have been no assignments of the Riggins Mortgage to the FNMA REMIC 2007-63 Trust recorded in the Official Records of the Westchester County Recorder&#39;s Office, although both Fannie Mae&#39;s own requirements (cited below) and New York State Law require assignments memorializing the sale and negotiations of the Riggins Note along with the acquiring of rights. Therefore, the FNMA REMIC 2007-63 Trust appears to have violated Title 18 USC Chapter 47 §1021.

40.     Fannie Mae states in its own December 2010 Fannie Mae Requirements for

**Document Custodians v6.0, page 8:**

**Documents:** For each Mortgage Loan, the related promissory note, mortgage assignment to Fannie Mae, and other documents that Fannie Mae requires to be deposited with the Document Custodian: (i) for its review and certification to Fannie Mae (as such Requirements are specified in the Guides, the RDC, both, and/or any other notice to the Document Custodian that describes Fannie Mae requirements for specific Mortgage Loans or Mortgage Loan types), and (ii) if the Mortgage Loans are acquired by Fannie Mae, for custody on behalf of Fannie Mae.

**Electronic Record:** a contract or other information record that is created, generated, sent, communicated, received, or stored by electronic means. An electronic record may be delivered as part of an electronic transaction by the lender, a Document Custodian, or Fannie Mae (or when a third party is involved, by the lender, a Document Custodian, or the third party). All electronic records for Mortgage Loans sold to Fannie Mae must comply with the standards of the federal Electronic Signatures in Global and National Commerce Act (E-SIGN) and, if applicable, the Uniform Electronic Transactions Act (UETA) adopted by the state in which the electronic record is initiated.

       **41.**     That any electronic transfers of the Riggins Mortgage that may have been executed without recording within the Official Records of the Westchester County Recorder Office are void under **Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003:**

    **(a) Excepted requirements**

**The provisions of section 7001 of this title shall not apply to a contract or other record to the extent it is governed by (3) the Uniform Commercial Code, as in effect in any State, other than sections1–107 and 1–206 and Articles 2 and 2A**

**42.**    That FNMA REMIC 2007-63 Trust have an interest in the Riggins Intangible

Obligation, however, according to New York State Law, the FNMA REMIC 2007-63 Trust can

only be entitled to enforce the Riggins Mortgage if they took the Riggins Mortgage by way of

assignments pursuant to:

**NY Code § 290. Definitions; effect of article.**

1. The term real property  as used in this article, includes lands, tenements and hereditaments and

chattels real, except a lease for a term not exceeding three years.

 2.The term purchaser includes every person to whom any estate or interest in real property is

conveyed for a valuable consideration, and every assignee of a mortgage, lease or other

conditional estate.

3. The term conveyance includes every written instrument, by which any estate or interest in real

property is created, transferred, mortgaged or assigned, or by which the title to any real property

may be affected, including an instrument in execution of a power, although the power be one of

revocation only, and an instrument postponing or subordinating a mortgage lien; except a will, a

lease for a term not exceeding three years, an executory contract for the sale or purchase of

lands, and an instrument containing a power to convey real property as the agent or attorney for

the owner of such property.

4. The term recording officer  means the county clerk of the county, except in a county having a

register, where it means the register of the county.

5. Recording or recorded means the entry, at length, upon the pages of the proper record books

in a plain and legible hand writing, or in print or in symbols of drawing or by photographic

process or partly in writing, partly in printing, partly in symbols of drawing or partly by

photographic process or by any combination of writing, printing, drawing or photography or

either or any two of them. Recording or ;recorded also means the reproduction of instruments by microphotography or other photographic process on film which is kept in appropriate files.

6. This article does not apply to leases for life or lives, or for years, heretofore made, of lands in either of the counties of Albany, Ulster, Sullivan, Herkimer, Duchess, Columbia, Delaware or Schenectady...

## NY Code § 291. Recording of conveyances.

A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof, or acquires by assignment the rent to accrue there from as provided in section two hundred ninety-four-a of the real property law, in good faith and for a valuable consideration, from the same vendor or assignor, his distributers or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributers or devisees, if such contract is made in good faith and is first duly recorded. Notwithstanding the foregoing, any increase in the principal balance of a mortgage lien by virtue of the addition thereto of unpaid interest in accordance with the terms of the mortgage shall retain the priority of the original mortgage lien as so increased provided that any such mortgage instrument sets forth its terms of

repayment.

**Mckinney Consolidated Laws of New York Annotated Real Property Actions and Proceedings**

**Law:**

**Chapter 81. Of the Consolidated Laws**

**Article 13. Action to Foreclose a Mortgage**

Where various assignees together owned and held both mortgage and mortgage note, fact that assignees of portion of mortgage note, who had brought action on note, and other assignees, who had instituted foreclosure action, were different persons did not entitle assignees to avoid either mortgage limitation that mortgagees would look only to mortgaged property to recover debt or prohibition of this section against maintaining action to recover portion of mortgage...

...Plaintiff, who received assignment of mortgage without assignment of note as collateral security for promise of indemnification, could not maintain action for foreclosure and deficiency judgment since foreclosure of mortgage may not be brought by one who has no title to it and absent transfer of debt, assignment of mortgage is nullity...

43.     The Riggins Mortgage must have been duly assigned to the FNMA REMIC 2007-63 Trust for the FNMA REMIC 2007-63 Trust to be entitled to enforce the Riggins Mortgage.

44.     That a duly recorded assignment of the Riggins Mortgage constitutes constructive notice while an unrecorded assignment of the Riggins Mortgage is notice only to immediate parties. With constructive notice, all persons attempting to acquire rights in the Riggins Property are deemed to have notice of the recorded instrument. In this way, the

Recording Statute is intended to expose the chain of title of the Riggins Mortgage to inspection by examination of real property records, protecting innocent junior purchasers and lenders from secret titles and the subsequent fraud attendant to such titles.

45.     That  assignments of the Riggins Mortgage must be accompanied by parallel endorsements of the Riggins Note for the Riggins Mortgage Loan to remain secured by the Riggins Property. Because endorsements are very often undated and because a plaintiff must prove that it had standing at the inception of a case, Marianna &amp; B.R. Co. v. Maund, 56 So. 670, 672 (Fla. 1911), the assignment, assignor, his distributers or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributers or devisees, if such contract is made in good faith and is first duly recorded.

46.     Notwithstanding the foregoing, any increase in the principal balance of mortgage lien by virtue of the addition thereto of unpaid interest in accordance with the terms of the mortgage shall retain the priority of the original mortgage lien as so increased provided that any such mortgage instrument sets forth its terms of repayment.

Mckinney &#39;s Consolidated Laws of New York Annotated

Real Property Actions and Proceedings Law

Chapter 81. Of the Consolidated Laws

Article 13. Action to Foreclose a Mortgage.

      47.    Where various assignees together owned and held both mortgage and mortgage note, fact that assignees of portion of mortgage note, who had brought action on note, and other assignees, who had instituted foreclosure action, were different persons did not entitle assignees to avoid either mortgage limitation that mortgagees would look only to mortgaged property to recover debt or prohibition of this section against maintaining action to recover portion of mortgage...Plaintiff, who received assignment of mortgage without assignment of note as collateral security for promise of indemnification, could not maintain action for foreclosure and deficiency judgment since foreclosure of mortgage may not be brought by one who has no title to it and absent transfer of debt, assignment of mortgage is nullity...

      48.    That defendant filed a Civil Action for Foreclosure against the Residential property of defendant located at 72 Mongolia Avenue, Mount Vernon New York, 10553, and erroneously claimed that defendant was served with a true copy of civil action.

      49.    This system of securitization has a serious legal flaw as it provides that the Account Debtor (Intangible Obligor) and the Debtor (Tangible Obligor) have to be one in the same which is a logistical and legal impossibility. As the Intangible Obligee is not perfected of record to the Tangible Mortgage (Tangible Security securing the Tangible Article 3 Note) and not having the Tangible Article 3 instrument negotiated from Tangible Obligee to Intangible Obligee as provided under UCC 3, the Intangible Obligee has no real property securing an Obligation created by the Account Debtor. Whereas UCC 3 allows proving up an Article 3 Tangible Instrument, such law does not extend to the Tangible Security that once secured the Tangible Article 3 Note made payable to the Originating Tangible Obligee. NON-Holder-in-Due-Course Alleges Default: (Trustee/Mortgage Servicer)

The Mortgage Servicer or the Trustee of the INTANGIBLE Investment Vehicle declares default.

• Numerous actions of fraud are readily identifiable.

• As noted in the four (4) electronic negotiations of the electronic loan package to securitization, there is a lack of supporting law to allow electronic negotiation. Only the Holder of the "Paper Promissory Note" entitled in the indebtedness has a right to collect payments.

• Lost Note Affidavits based on Electronic Records are Hearsay

• Introduction of fraud into the Securities Market

• Fraudulent creation of assignments in attempt to transfer lien rights from Originator to 3rd or 4th subsequent purchaser bypassing 1st and 2nd purchasers resulting in fraudulent filing in public records.

50.    That defendants acted with a pattern and practice of fraud and deceit in filing a State civil action for foreclosure against plaintiff without an indispensable original note at the time of filing civil foreclosure action.

51.    That defendants acted with a pattern and practice of fraud and deceit in filing a State civil action for foreclosure against plaintiff without standing to do so,

52.    That defendants violated the Fair debt Collection Practice Act, in failing to verify the debt.    53.    That defendants violated the Fair Debt Collection Practice Act, in attempting to collect a debt from the plaintiff which defendant was not the true creditor.

54.    That defendants violated the Fair Debt Collection Practice Act, in obtaining a Final Judgment of Foreclosure and Sale, without the indispensable note and without standing to do so and employed a pattern and practice of fraud on the plaintiff to deprive plaintiff of his

primary residence and a fraud on the State Court, deliberately confusing the Court to obtain a Final Judgment of Foreclosure & Sale.

55.     That defendants acted with a pattern and practice of Fraud in Concealment by concealing facts from the plaintiff revealing that defendant was not the true owner in due course of the note, mortgage or property, unlawfully foreclosing on plaintiff primary resident and selling it at auction.

56.     That defendants received an unjust windfall in fraudulently foreclosing on plaintiff's primary residence without standing to do so and plaintiff is entitled to a return of his primary residence.

57.     That defendants violated the Fair Credit Reporting and Disclosure Act, by filing false claims of debt against the plaintiff, destroying plaintiff's credit history and title.

## COUNT ONE
## FRAUD IN CONCEALMENT

58.     That here plaintiff incorporates by reference all facts and averments as set forth more fully in paragraphs 1-55 above, as though fully set forth herein, and;

59.     That plaintiff charges the defendants while acting in concert with each other, concealed facts proving that the defendants did not have an indispensable note at the time of filing state civil action for foreclosure against plaintiff's primary residence, which plaintiff is the True owner in due course of.

60.     That plaintiff charges the defendants while acting in concert with each other, Fraudulently concealed facts proving that the defendants did not have standing to file foreclosure against plaintiff's primary residence.

**WHEREFORE, plaintiff demands a Money Judgment in the amount of Five Million Dollars, ($5,000,000.00) for compensatory and punitive damages, pre and post judgment interest, court costs and reasonable attorney fees, and any other relief the court may deems necessary and just within its jurisdiction.**

## COUNT TWO
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICE ACT

61.     That here plaintiff incorporates by reference all facts and averments as set forth more fully in paragraphs 1-58 above, as though fully set forth herein, and;

62.     That defendants jointly engaged in a pattern and practice of conduct in violation of the FDCPA, by filing a State Civil Action for Foreclosure against plaintiff's primary residence, without an indispensable note proving the debt, and without standing to do so.

63.     That defendants jointly foreclosed on plaintiff's primary residence to collect on a debt which as not due or owing to them.

64.     That defendants failed to send plaintiff's indispensable written notice validating the debt under the act, and the monetary amount claimed by defendants in state civil action for foreclosure was greater than actual amount of alleged debt owed.

**WHEREFORE, plaintiff demands a Money Judgment for statutory and punitive damages a determined by a jury at trial, together with pre and post judgment interest, court costs and reasonable attorney fees, and any other relief the court may deems necessary and just within its jurisdiction.**

## COUNT THREE
## VIOLATION OF THE FAIR REPORTING & DISCLOSURE ACT

65.     That here plaintiff incorporates by reference all facts and averments as set forth more fully in paragraphs 1-62 above, as though fully set forth herein, and;

66.     That defendants falsely reported a debt not owed by plaintiff to them, related

to a foreclosure where defendants had no standing, in violation of the act.

67.     That defendants false report to credit reporting agencies caused plaintiff to

suffer damage to credit worthiness and title.

**WHEREFORE, plaintiff demands a Money Judgment for statutory and punitive damages a determined by a jury at trial, together with pre and post judgment interest, court costs and reasonable attorney fees, and any other relief the court may deems necessary and just within its jurisdiction.**

## COUNT FOUR
### UNJUST ENRICHMENT

68.     That here plaintiff incorporates by reference all facts and averments as set

forth more fully in paragraphs 1-65 above, as though fully set forth herein, and;

69.     That defendants acquired an unjust enrichment under false pretense in filing a

civil foreclosure action against the primary residence of the plaintiff, where they did not possess

an indispensable original note proving the debt and had no standing to foreclose.

**WHEREFORE,  plaintiff demands return of resident free and clear title a Money Judgment for  28 Million Dollars ($28,000,000.00), in actual and compensatory damages, together with punitive damages in an amount to be determined by a jury at trial, together with pre and post judgment interest, court costs and reasonable attorney fees, and any other relief the court may deems necessary and just within its jurisdiction.**

---

**DENNIS RIGGINS**                          **Mailing address**
**Plaintiff pro se.**                          **46 Gramatan Avenue/ Suite 142**

**72 Magnolia avenue.**                       **Mount Vernon NY 10550**

**Mount Vernon NY 10553.**                    **Email / bw.inc@aol.com**

## CERTIFICATION OF SERVICE

January 3, 2020

I Dennis Riggins,  swear on this day ~~December 31, 2019~~ my affirmation of service by certified USPS to the followings

**Wilmington Saving and Funds Society.**                    **M & T Bank**

**500 Delaware Avenue.**                                    **PO Box 1288**

**Wilmington, DE, 19801.**                                  **Buffalo NY 14240**

**Upland Mortgage Acquisition Co llc**

**C/o CARRINGTON Capital Mgmt.**              **Carrington Mortgage service llc**

**1700 E. Putnam Avenue 5 flr.**                **80 Lamberton rd #20**

**Old Greenwich Connecticut, 06870.**            **Windsor CT 06095**

**BAYVIEW loan mortgage services**              **Upland Mortgage Acquisition Co llc**

**4425 Ponce de Leon blvd, 5th Flr.**            **Wilmington Saving and Funds soc.**

**Coral Gables, Fl, 33146.**                      **500 Delaware ave**

                                                 **Wilmington , DE, 19801**

**McCabe Weinberg & Conway PC**

**145 Huguenot street.**                          **Andrew Romano**

**New Rochelle, NY 10801.**                       **20 South Broadway unit 902**

                                                 **Yonkers, NY  10701**

22/22