```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  5/11/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS RIGGINS,

                        Plaintiff,

-against-

WILMINGTON SAVINGS FUNDS AND
SOCIETY, et al.,

                        Defendants.

20 Civ. 17 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Pro se Plaintiff Dennis Riggins ("Plaintiff" or "Mr. Riggins") commenced this action on or about January 1, 2020 against Defendants Bayview Loan Services LLC ("Bayview"), Carrington Mortgage Loan Services ("Carrington"), M&T Bank, Upland Mortgage Acquisition Co. LLC ("Upland"), Wilmington Savings Funds and Society ("Wilmington"), alleging that Defendants Wilmington and Upland erroneously claimed to own 72 Magnolia Avenue in Mount Vernon, New York ("the Property"), when Plaintiff is the true owner, and Bayview, M&T, and Carrington acted in concert with Wilmington and Upland to fraudulently foreclose on the Property. (ECF No. 2.) Defendants Carrington, Upland, and Wilmington (collectively, the "Wilmington Defendants") (ECF No. 25), and Defendants Bayview and M&T Bank (the "Bayview Defendants") (ECF No. 41) moved to dismiss for both lack of jurisdiction and failure to state a claim. For the following reasons the motions are GRANTED.

**BACKGROUND**

The facts in this section are drawn from the Complaint and from various judicially noticeable documents including recorded deeds[1] and filings and decisions from the underlying Westchester Supreme Court foreclosure action.[2] *See Jackson v. New York State*, 523 F. App'x 67, 68 (2d Cir. 2013) ("Matters subject to judicial notice—such as decisions in related proceedings—are properly considered on a motion to dismiss and do not require the court to consider the motion as one for summary judgment" even if such documents were submitted by defendants in support of their motion papers); *Jaffer v. Hirji*, No. 14-CV-2127 KMK, 2015 WL 6473033, at *2 (S.D.N.Y. Oct. 27, 2015) ("On a motion to dismiss, courts may take judicial notice of public records, such as properly recorded deeds."), *aff'd*, 887 F.3d 111 (2d Cir. 2018).

**I.    History of the Property and Mortgage**

Plaintiff's mother, Ruby Riggins, purchased the Property on June 5, 2007, and the deed was recorded on June 26, 2007. (Ex A to Miller Decl. (ECF No. 26-1).) In conjunction with the purchase, Ms. Riggins borrowed $417,000 from Sterling Empire Funding Associate, a mortgage loan agreement was executed and dated June 6th, 2007 (the "Mortgage"), and the Mortgage was later recorded with Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee on June 26, 2007. (Ex B. to Miller Decl. (ECF No. 26-2); Compl. ¶ 18

On January 12, 2009, MERS executed a written assignment of the Mortgage to Chase Home Finance, LLC; and that assignment was recorded on August 16, 2010. (Ex. D. to Miller

---

[1] The Complaint references and relies on these deeds and they were also provided to the Court as exhibits attached to declarations in support of Defendants' motions to dismiss.

[2] Specifically, Bayview and M&T's memorandum in support of their motion asks the Court to take judicial notice of the state foreclosure action (ECF No. 42 at 7-8), and both sets of Defendants filed affidavits in support of their respective motions attaching the state foreclosure documents.

Decl. (ECF No. 26-4); Compl. ¶ 19.) A corrective assignment from MERS to JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC ("Chase") was dated December 19, 2013, and recorded January 30, 2014. (ECF No. 26-4; Compl. ¶ 20.)

By deed dated October 19, 2009 and recorded on January 22, 2010, Sandra Riggins, as executrix of the Estate of Ruby Riggins, conveyed the remainder of the Property to Mr. Riggins. (Ex. E to Miller Decl. (ECF No. 26-5).)

On April 3, 2014, Chase assigned the Mortgage to Bayview, which was recorded June 11, 2014. (Ex. F. to Miller Decl. (ECF No. 26-6); Compl. ¶ 21.)

## II.     The State Foreclosure Action

On September 9, 2014, Bayview Loan Servicing, LLC sued Sandra Riggins, as Executrix of the Estate of Ruby Riggins; Dennis Riggins; and others in Westchester County Supreme Court ("the State Foreclosure Action"). (Ex. G to Miller Decl. (ECF No. 26-7); Ex. A to Roberts Decl. (ECF No. 43-1); hereinafter, the "Foreclosure Complaint").) The Foreclosure Complaint alleges that beginning with the August 1, 2008 payment, Mr. Riggins and others failed to pay as required by the terms of the Mortgage. (*Id.*). Bayview filed an affidavit of service of the Foreclosure Complaint and summons on Mr. Riggins. (Ex. B. to Roberts Decl. (ECF No. 43-2).) Multiple foreclosure settlement conferences were held. (Ex. H to Miller Decl. (ECF No. 26-8).) Throughout the process, Mr. Riggins failed to provide necessary documents for a loan modification. (Ex. M. to Miller Decl. (ECF No. 26-13).)

On July 9, 2015, Bayview moved for an order of reference to a court-appointed referee (the "Referee"), which was entered October 8, 2015. (Ex. J to Miller Decl. (ECF No. 26-10); Ex. D to Roberts Decl. (ECF No. 43-4).) On March 31, 2016, Bayview filed a Motion for a Judgment of Foreclosure ("Motion for JFS") requesting that the Foreclosure Court adopt the Referee's report

that computed the total sum owed to Bayview through and including December 17, 2015 to be $792,455.16. (Ex. K to Miller Decl. (ECF No. 26-11).)

On or about May 13, 2016, Mr. Riggins submitted his opposition to the Motion for JFS and averred that (1) Bayview committed fraud, (2) Bayview failed to abide by the Consumer Financial Protection Bureau rules, (3) Bayview failed to provide and/or failed to honor a loan modification, (4) Carrington, as the successor servicer failed to provide a loan modification application, (5) Bayview lacked standing to foreclose, (6) the note and mortgage had been improperly assigned, and (7) the pooling and servicing agreement was violated. (Ex. L to Miller Decl. (ECF No. 26-12); Ex. E to Roberts Decl. (ECF No. 43-5).) On June 13, 2016, Bayview filed a reply affirmation in further support of its Motion for JFS and contended that Bayview proceeded to foreclosure because Mr. Riggins failed to provide certain documents required to complete any loan modification. (Ex. M to Miller Decl. (ECF No. 26-13).) Mr. Riggins filed reply affidavits on January 24, 2017 and September 27, 2017 contending that Bayview failed to provide a modification and questioning, inter alia, the assignment of the Mortgage to different entities. (Ex. N to Miller Decl. (ECF No. 26-14).)

The Foreclosure Court entered judgment in Bayview's favor in the amount of $792,455.16, ratified the Referee's report, and noted that the Foreclosure Court had reviewed oppositions and replies filed, held over a dozen settlement conferences, and that Mr. Riggins failed to complete a modification application. (Ex. O to Miller Decl. (ECF No. 26-15) ("Foreclosure Judgment").) A notice of sale was filed on June 7, 2018. (Ex. P to Miller Decl. (ECF No. 26-16).)

Mr. Riggins attempted to move by order to show on June 27, 2018 and February 8, 2019—challenging standing, alleging violation of the trust documents, demanding to see the original note and mortgage, and asserting he was not properly served—but the Foreclosure Court refused to sign

his proposed these orders (Exs. S, X to Miller Decl. (ECF Nos. 26-19 and 26-24). Mr. Riggins moved by order to show cause dated February 11, 2019, and then by notice motion dated April 4, 2019, to vacate the judgment of foreclosure and sale, arguing that he was not properly served and challenging standing. (Exs. Y and Z to Miller Decl. (ECF Nos. 26-25, 26-26); Exs. O and P to Roberts Decl. (ECF No. 43-15, 43-16).) The Foreclosure Court denied Mr. Riggins motions, noting "the court conferenced this case for years, and Mr. Riggins was given many opportunities to be heard." (Exs. K, Q to Roberts Decl. (ECF No. 43-11, 43-18); Exs. V, AA to Miller Decl. (ECF Nos. 26-22, 26-28).)

Mr. Riggins also filed two purported answers, dated September 7, 2018, and January 11, 2019, respectively, alleging lack of standing generally, Carrington lacked authority, and Wilmington committed fraud, and demanded to see the original loan documents. (Ex. W to Miller Decl. (ECF No. 26-23).)

On July 10, 2019, Mr. Riggins filed a notice of appeal of the Foreclosure Court's June 2019 order denying Mr. Riggins' motion to vacate. (Ex. R to Roberts Decl. (ECF No. 43-19); Ex. BB to Miller Decl. (ECF No. 26-29).) By email dated March 26, 2020, the New York Supreme Court Appellate Division - Second Judicial Department informed counsel for Wilmington that Mr. Riggins' appeal was not perfected and therefore had been dismissed. (Ex. BB to Miller Decl. (ECF No. 26-29).)

### III.    The Instant Federal Action

Plaintiff filed this action on January 2, 2020 and alleged that he owns the Property (Compl. ¶¶ 6, 11) and that Defendants acted in concert to create a fraudulent paper trail depriving Plaintiff of the Property (Compl. ¶ 22) and "prosecuted an erroneous civil action" in which Riggins was never properly or timely served (Compl. ¶ 11). The Complaint asserts four causes of action: (1)

Defendants acted in concert to fraudulently conceal that they did not have an indispensable note and therefore that they lacked standing to foreclose on the Property, (2) Defendants violated the Fair Debt Collection Practice Act by filing the State Foreclosure Action without an indispensable note or written notice validating the debt, (3) Defendants violated the Fair Reporting & Disclosure Act when they falsely reported a debt not owed to them by Riggins, and (4) Defendants were unjustly enriched by their filing of a civil foreclosure action under false pretenses. (Compl. ¶¶ 58-69.) The Complaint seeks $5,000,000 in compensatory, statutory, and punitive damages plus fees and costs. (*Id.*)

The Court granted Plaintiff's request to proceed in forma pauperis (ECF No. 3) and issued an Order of Service directing the Clerk of Court and the U.S. Marshals Service to affect service on his behalf (ECF No. 5). The Court granted the Wilmington Defendants leave to move to dismiss (ECF No. 14), which they did (ECF No. 25). Plaintiff did not oppose that motion. (*See* ECF No. 28.) The Court subsequently granted the Bayview Defendants leave to file a motion to dismiss (ECF No. 31), which they did (ECF NO. 41). In response to the Bayview Defendants' motion, Plaintiff submitted an affidavit attaching a chain of title analysis and mortgage investigation report prepared by a third party.[3] (ECF Nos. 40 and 45.)

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas*

---

[3] Neither the affidavit nor the report address any of Defendants' jurisdictional arguments.
Additionally, while both motions to dismiss were pending, Plaintiff filed a letter requesting a settlement conference and attaching the complaint from the foreclosure action and a voluntary liens report. (ECF No. 49.) Because this letter was submitted long after the motions were filed, the Court has not considered this letter or its attachments in its review of Defendants motions.

*Telecomms.,* 790 F.3d 411, 416-17 (2d Cir. 2015) (citations and quotation marks omitted). "[T]he 'irreducible constitutional minimum' of standing" requires that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" each element of constitutional standing. *Id.* (citations omitted). Because "the elements of Article III standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Carter v. HealthPort Techs., LLC,* 822 F.3d 47, 56 (2d Cir. 2016) (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan,* 504 U.S. at 561.

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter,* 822 F.at 57. Such a motion is facial when it is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id.* In such cases, at the pleading stage, "the plaintiff has no evidentiary burden," *id.*, and the court accepts as true "all material allegations of the complaint and construe[s] the complaint in favor of the complaining party." *Cortlandt Street,* 790 F.3d at 417 (citations, quotation marks, and alterations omitted). Where, however, a defendant "proffer[s] evidence beyond the Pleading," the motion is "fact-based." *Carter*, 822 F.3d at 57. "In opposition to such a motion, the plaintiffs [must] come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on

a 12(b)(1) motion . . . reveal the existence of factual problems in the assertion of jurisdiction." *Id.* (internal quotation marks omitted, alteration in original).

## DISCUSSION

Defendants contend that this Court lacks jurisdiction because Mr. Riggins filed this action to attack the judgment of foreclosure and sale in a state foreclosure action—an action in which he participated—and this case is therefore barred by the *Rooker-Feldman* doctrine.[4] The Court agrees that this action is barred by *Rooker-Feldman*.

"Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The doctrine covers claims actually litigated in state court as well as those "that are 'inextricably intertwined' with state court determinations." *Chris H. v. New York*, 764 F. App'x 53, 56 (2d Cir. 2019) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)).

> There are "four requirements for the application of *Rooker–Feldman* ": (1) the federal-court plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by a state court judgment"; (3) the plaintiff "invite[s] . . . review and rejection of that judgment"; and (4) the state judgment was "rendered before the district court proceedings commenced."

*Vossbrinck*, 773 F.3d at 426 (quoting *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005)). The Second Circuit has explained that the second requirement "turns not on the *similarity* between a party's state-court and federal-court claims . . . but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) (emphasis in original).

---

[4] Neither Plaintiff's affirmation nor the chain of title report appended to it address Defendants' claims that this court lacks jurisdiction.

There are no "general exceptions to the *Rooker-Feldman* doctrine for federal suits asserting that the state court acted without jurisdiction or in violation of the requirements of due process" or where a plaintiff alleges that the state court judgment was procured by fraud. *Grundstein v. Lamoille Superior Docket Entries/Ords.*, 821 F. App'x 46, 48 (2d Cir. 2020).; *accord Fiorilla v. Citigroup Glob. Markets, Inc.*, 771 F. App'x 114, 115 (2d Cir. 2019) (holding that "a plaintiff cannot rely on allegations that the state court judgment at issue 'was obtained fraudulently' to avoid application of the *Rooker-Feldman* doctrine"). Additionally, a federal court lacks jurisdiction as long as a state court loser is seeking review of a state court judgment, "it does not matter that the plaintiff added parties to the federal action who were not parties to the state action." *Russo v. GMAC Mortg., LLC*, 549 F. App'x 8, 10 (2d Cir. 2013).

All four of the *Rooker-Feldman* requirements are met here. First, Plaintiff lost in state court when the Foreclosure Court entered judgment for Bayview. Second, all four causes of action allege injury premised on foreclosure on Plaintiff's residence, which clearly resulted from the State Court Judgment itself. *See, e.g.*, *Scott v. Cap. One, Nat. Assocs.*, No. 12-CV-00183 ER, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013) (holding that plaintiffs' claims that they "were not properly served with the requisite foreclosure notices, and that Capital One lacked standing to commence the foreclosure action because it failed to show proof of its ownership of the underlying note" were complaints of "an injury *caused by* the judgment" and therefore barred by *Rooker-Feldman*). Third, by challenging the propriety of the foreclosure in each cause of action, the Complaint explicitly asks the Court to review the State Court's judgment.

> [Because] [h]e is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose. This would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error.

*Vossbrinck*, 773 F.3d at 427. Finally, the State Foreclosure judgment was issued in 2018, nearly two years before Plaintiff initiated this suit, and Plaintiff filed this action well after the time to perfect an appeal in state court passed. Moreover, Plaintiff actively participated in the State Foreclosure Action where he filed three separate OSCs and a Motion to Vacate all challenging Bayview's standing and the State Foreclosure Court's jurisdiction over Riggins, which the State Foreclosure Court rejected, and began but did not perfect an appeal of the State Foreclosure Court's determination with the Second Department.

In sum, this Court lacks jurisdiction over all of Riggins' claims because they are all "inextricably intertwined" with Foreclosure Action.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions and dismisses the Complaint. The Clerk of the Court is directed to (1) terminate the motions at ECF Nos. 25 and 41, (2) terminate this action, (3) mail a copy of this opinion and order to pro se Plaintiff at the address on ECF; and (4) show service on the docket.

Dated: May 11, 2021　　　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge